**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

PAUL RECKTENWALD, et al.,               )          3:04-CV-00690-ECR (RAM)
                                         )
            PlaintiffS,                  )
                                         )          **REPORT AND RECOMMENDATION**
      vs.                                )          **OF U.S. MAGISTRATE JUDGE**
                                         )
DR. STEVEN MACARTHUR, et al.,            )
                                         )
            Defendants.                  )
_____)

      This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

      Before the court is Defendants' Motion for Summary Judgment (Doc. # 30).  Plaintiff opposed the Motion (Doc. # 52),  and Defendants replied (Doc. #62).

      On or about August 1, 2005, Plaintiff Paul Recktenwald ("Plaintiff") filed an amended *pro se* Civil Rights complaint pursuant to 42 U.S.C. section 1983, alleging violations in three counts of his Eighth and Fourteenth Amendment Due Process Rights on the part of Ely State Prison, ("ESP") officials, Dr. Steven MacArthur, Warden E.K. McDaniels, Sgt. Jerry Bainbridge, Lt. John Messick, and Correctional Officers, Scott Evers and Delvin Gregerson. In Count I he alleges that Defendants McDaniels, Messick, and Bainbridge violated his Eighth amendment right to be free from cruel and unusual punishment for failing to protect him from food contaminated by other inmates and were deliberately indifferent to his medical needs. (Doc. # 9)  Plaintiff withdrew Count II of his complaint, which removed his Fourteenth Amendment claim and Correctional Officers Evers and Gregerson from

1  the list of Defendants. (Doc. # 52, pg. 6). Count III of Plaintiff's complaint alleges that Defendant Dr.

2  MacArthur also violated Plaintiff's Eighth Amendment rights.

3  **BACKGROUND**

4      This case arises out of Plaintiff's incarceration with ESP.  On March 26, 2006, Plaintiff, a

5  segregated population inmate,  alleges that he suffered chemical burns to the mouth as a result of being

6  served contaminated maccaroni and cheese ("mac and cheese") in the ESP mess hall by general

7  population inmates. (Doc. # 9).  He contends that all Count I Defendants are liable for this harm because

8  they failed to protect him from harm by other inmates. (*Id.*). Plaintiff argues that they were aware of

9  the general population's recurrent attempts to poison segregated inmates by contaminating their food.

10  (*Id.).*  Count I Defendants contend however that Plaintiff is the only person who believes that the mac

11  and cheese served in the mess hall on March 26, 2004, was contaminated and that any prior alleged

12  incidents of food contamination are irrelevant to the day in question. (*See* Doc. #30).  Defendant Lt.

13  Messick immediately investigated the situation and determined that the mac and cheese contained no

14  scent or flavor of bleach.  (Doc. #30, Exh. E).  Count I Defendants also contend that even if the mac

15  and cheese was contaminated on March 26, 2004, they are not liable to Plaintiff because none of them

16  had a duty to oversee the operations in the kitchen where the food was prepared, and thus could not

17  have known whether or not general population inmates tampered with the food. (Doc. # 30).

18      In Count III, Plaintiff alleges that Defendant Dr. MacArthur is liable to him for medical

19  deliberate indifference because he delayed treating Plaintiff's chemical burns which resulted in his

20  injury worsening to the point that it will have a lifetime effect on him. (Doc. # 9).  Plaintiff did not see

21  Defendant Dr. MacArthur until ten days after he allegedly received chemical burns to his mouth. (*Id*.).

22  Plaintiff contends that this delay has caused him to develop a lisp and experience sensitivity to hot and

23  cold liquids which he did not have before he ate the mac and cheese. (*Id.*).  Defendant Dr. MacArthur

24  contends that Plaintiff had to wait ten days because it was determined by the nightly pill call nurse on

25  the night of the incident that Plaintiff had cold sores and not chemical burns- thus his condition was

26  not as serious as those of other inmates who needed immediate medical treatment. (Doc. # 30, Exh.

27  F).  Plaintiff did not visit the doctor again, regarding his mouth, until a year and a half after his

28  <center>2</center>

1   appointment with Defendant Dr. MacArthur, when he was then incarcerated at a different institution

2   (Doc. # 31, Exh. C1, pg. 8). Plaintiff's medical records subsequent to leaving ESP, reveal that he

3   suffered from a condition named, hyperesthesia, which caused the abnormal feelings in his mouth.

4   (Doc. # 31, Exh. C1). The medical records also reflect that three doctors, aside from Defendant Dr.

5   MacArthur, agree that Plaintiff never suffered chemical burns to the mouth. (*Id.*).

6   <center>**DISCUSSION**</center>

7   A.   Standard for Summary Judgment

8          The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as

9   to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471

10  (9th Cir. 1994).  The moving party is entitled to summary judgment where, viewing the evidence and

11  the  inferences arising therefrom in favor of the  nonmovant, there are no genuine issues of material

12  fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.CivP. 56(c);

13  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where

14  there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.

15  Fed.R.Civ.P. 50(a).  Where reasonable minds could differ on the material facts at issue, however,

16  summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995),

17  cert. denied, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

18         The moving party bears the burden of informing the court of the basis for its motion, together

19  with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v.*

20  *Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).  Once the moving party

21  has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the

22  pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*

23  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Although

24  the parties may submit evidence in an inadmissible form, only evidence which might be admissible

25  at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P.

26  56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

27

28                                                  3

1    In evaluating the appropriateness of summary judgment, three steps are necessary: (1)

2    determining whether a fact is material; (2) determining whether there is a genuine issue for the trier

3    of fact, as determined by the documents submitted to the court; and (3) considering that evidence in

4    light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.  As to

5    materiality, only disputes over facts that might affect the outcome of the suit under the governing law

6    will properly preclude the entry of summary judgment.  Factual disputes which are irrelevant or

7    unnecessary will not be considered. *Id.*  Where there is a complete failure of proof concerning an

8    essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving

9    party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552-53.

10    In attempting to establish the existence of a factual dispute, the opposing party may not rely

11    upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of

12    affidavits, and/or admissible discovery material in support of its contention that a the dispute exists.

13    Rule 56 (e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586  n. 11 (1986).  In

14    resolving a summary judgment motion, the court examines the pleadings, depositions, answers to

15    interrogatories, and admissions on file, together with affidavits, if any. Rule 56(c). Summary judgment

16    is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex*,

17    477 U.S. at 323.

18    A.    Count I- Deliberate Indifference to Inmates Health and Safety

19    In order to establish liability for failure to protect against harm an inmate must prove that the

20    state official acted with "deliberate indifference" to his/her health or safety. *Farmer v. Brennan*, 511

21    U.S. 825 (1994); *Berg v. Kincheole,* 794 F. 2d, 457 (9th Cir. 1986). A prison official is deliberately

22    indifferent if he knows that an inmate faces a substantial risk of serious harm and fails to take

23    reasonable measures to prevent it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The deliberate

24    indifference standard requires a finding of some degree of "individual culpability." *Haygood v.

25    Younger*, 769 F. 2d 1350, 1354-55 (9th Cir. 1985). A Plaintiff must set forth specific facts as to each

26    individual Defendant's deliberate indifference, *Leer v. Murphy*, 844 F. 2d  628, 634 (9th Cir. 1988);

27    *see also Berg v. Kincheloe*, 794 F. 2d 457, 460 (9th Cir. 1986);  and prove that this indifference was

28    4

1    the actual and proximate cause of Plaintiff's injury. *Id.* ; *see also Zatler v. Wainwright,* 802 F. 2d 397,

2    400-01 (11th Cir. 1986); *Williams v. Bennett*, 689 F. 2d 1370, 1380-81 (11th Cir. 1986). A Defendant's

3    conduct is the actual and proximate cause of Plaintiff' s injury only if the injury would not have

4    occurred "but for" that conduct.  *See* W. Prosser & W. Keeton, *The Law of Torts* § 41,  at 266 (5th Ed.

5    1984); *see also White v. Roper*, 901 F. 2d 1501, 1505 (9th Cir. 1990).

6         Plaintiff alleges in Count I that Defendants McDaniel, Messick, and Bainbridge ("Count I

7    Defendants") acted with "deliberate indifference"  to  his health and safety by failing to protect him

8    from general population inmates who allegedly contaminated his food with bleach.  (Doc. # 9).  To

9    prevail here Plaintiff must show that (1) Defendants knew he was at a serious risk of harm of which

10   they ignored, and (2) that each specific Defendant actually caused the harm. To prove that Plaintiff was

11   at a serious risk of harm he must show that the mac and cheese served to him at ESP was in fact

12   contaminated.  Plaintiff has not provided any proof in the form of affidavits or otherwise to show that

13   the mac and cheese he received was indeed contaminated on May 26, 2004. *See* Rule 56 (c). Plaintiff

14   alleges that Defendant Messick agreed that Plaintiff's food was contaminated with what seemed to

15   bleach, however Defendant Messick declares that he was unable to find any trace of bleach on

16   Plaintiff's tray, and that no other inmate complained of their food being contaminated or filed medical

17   kites [1]. (See Doc. # 30, Exh. E, # 6 & 10). Furthermore, Plaintiff admits that he does not know of any

18   other inmate that was also served mac and cheese on that day who complained of it smelling or tasting

19   contaminated. (See Doc. # 30, Exh. A, pg. 28. ll.1-9).

20        Plaintiff also alleges that all Count I Defendants were aware of the mac and cheese being

21   contaminated because contaminating segregated inmate's food was a common practice done by general

22   population inmates. (Doc. # 9). Plaintiff provides affidavits, letters, and newspaper clippings related

23   to past incidents of food contamination to support his position that this was a common practice at ESP

24   and thus Defendants should have taken precautions to prevent the mac and cheese being contaminated

25

26        [1] Defendant Messick conducted an investigation along with the Culinary Supervisor, Roy Williams, who
     supervised the general population inmates in the kitchen and found the mac and cheese to be fine. As a precaution,

27   Defendant Messick allowed those inmates who were concerned about Plaintiff's complaints to get a new tray of mac
     and cheese. (Doc. #30, Exh. E, #16).

28                                                        5

on May 26, 2004. (See Doc. # 52). However, rule 56 (e) requires that affidavits be based on personal knowledge and set forth facts able to be admitted into evidence.  Plaintiff's supporting documents are improper because they are based on other alleged incidents of food contamination many years prior and completely unrelated to the alleged contamination of Plaintiff's food.  Without evidence of Defendants' knowledge of food contamination on the day in question, there is no genuine issue as to whether or not Defendants knew that Plaintiff was at a serious risk of harm of which they ignored.

Looking at the evidence in the light most favorable to the Plaintiff the court can only conclude that the mac and cheese was not contaminated. Even if the mac and cheese was contaminated, Plaintiff has failed to establish that Defendants had knowledge of the contamination of which they failed to do anything about. Defendants' Motion for Summary Judgment should be granted as to Count I.

1.      Theory of *Respondeat Superior* and Defendant Warden McDaniel.

Even if Plaintiff was able to prove that his food was contaminated and that the other Count I Defendants knew about it but failed to prevent Plaintiff from eating it, his claim against Defendant McDaniel in his supervisory capacity would be void under a theory of *respondeat superior.*

In *Fayle v. Stapley*, 607 F. 2d 858, 862 (9th Cir. 1979), the Ninth Circuit established that supervisory personnel are not liable under § 1983 for the actions or inactions of their employees under a theory of *respondeat superior.  See also Mosher v. Saalfield*, 589 F. 2d 438, 441 (9th Cir. 1978). Thus, it is unnecessary to discuss wether the facts alleged give rise to a cognizable legal claim under the Eighth Amendment because Plaintiff's claim against Defendant wardens as supervisors fails on its face under the theory of *respondeat superior.*

B.      Count III- Medical Deliberate Indifference and Defendant Dr. Mc Arthur.

In order to prevail on an Eighth Amendment violation for delay in medical care, Plaintiff needs to prove that Defendant Dr. MacArthur was deliberately indifferent to a serious medical need of which he knew existed. *Erickson v. Pardus,* 127 S. Ct. 2197 (2007), 2007 *U.S. LEXIS* 6814*; quoting Estelle v. Gamble*, 429 U.S. 97 (1976); *see also, Wilson v. Seiter,* 501 U.S. 294, 297 (1991). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eight amendment violation only if those needs are serious." *Hudson v.*

6

1   *McMillan,* 503 U.S. 1, 9 (1992).  A serious medical need exists if the failure to treat a prisoner's

2   condition could result in further significant injury or the unnecessary and wanton infliction of pain.

3   *Erickson,* 127 S. Ct. at 2197; *see also, McGuckin v. Smith,* 974 F. 2d 1050, 1060 (9th Cir. 1992);

4   *quoting, Estelle,* 429 U.S. at 103.  An injury is significant injury when a reasonable doctor or patient

5   find it worthy of comment or treatment; when it significantly effects an individual's daily activities;

6   or when it is accompanied by chronic and substantial pain. *Id.* at 1059-1060.  The seriousness of a

7   prisoner's medical need and the doctor's response to that need must be established before attempting

8   to find deliberate indifference. *McGuckin*, 974 F. 2d at 1060.

9         1.   <u>Serious Medical Need</u>

10        In Count III, Plaintiff alleges that Defendant MacArthur delayed treating him for chemical burns

11  to the mouth and refused to give him pain medication which caused unwanted pain and subsequent

12  scarring in his mouth. (Doc. # 9).  Plaintiff submitted a medical kite requesting medical treatment at

13  10:42 p.m., on May 26, 2004, in which he wrote the question, "how long will this chemical burn last?"

14  (Doc. # 30, Exh. F, 4.). Plaintiff was not seen by Defendant Dr. MacArthur until 10 days later on June

15  4, 2004. (Doc. # 30, Exh. F). Defendants argue that this delay was because Plaintiff did not request to

16  see a doctor in his May 26th medical kite and because it was determined by two nurses on three separate

17  occasions, before seeing Defendant Dr. MacArthur, that Plaintiff had cold sores not chemical burns.

18  (*Id., see* Exhs. F-H). Thus, Plaintiff was placed on routine medical call, and when he was seen by

19  Defendant Dr. MacArthur on June 4, 2004, it was confirmed that the abnormalities in his mouth were

20  in fact cold sores[2]. (*See Id.* Exh. F, & Doc. #31, Exh. C2). Plaintiff argues that because Defendant Dr.

21  MacArthur wrote in Plaintiff's chart that Plaintiff complained of chemical burns, he treated Plaintiff's

22  ailment as such. (*See* Doc. # 31, Exh. C2, pg. 2).  But Defendant Dr. MacArthur opined that had

23  Plaintiff suffered chemical burns from ingesting food contaminated with bleach, objective evidence

24  would have existed on his June 4, 2004, examination. (Doc. #30, Exh. F).

25

26

27  _____

    [2] Routine medical call means a prisoner will be seen within two weeks of his complaint depending
    on the immediate needs of other prisoners. (Doc. # 30, Exh. F).

28                          7

1    Plaintiff also alleges that the ten day delay by Defendant Dr. MacArthur to treat him and his

2    refusal of further medical treatment for Plaintiff while at ESP was an unnecessary and wanton infliction

3    of pain and the cause of his injury worsening to the point that he now has developed a lisp and

4    sensitivities to hot and cold liquids.  (Doc. #60, pg. 5). But Plaintiff did not request further treatment

5    for his mouth in his remaining year and a half at ESP, thus Defendant Dr. MacArthur could not have

6    wantonly inflicted unnecessary pain upon Plaintiff- because he never refused him treatment. (See Doc.

7    #31, Exh. C1, pg. 6). Furthermore, the declarations by three Nevada Department of Corrections

8    ("NDOC") physicians and the medical report prepared by the NDOC reflect that Plaintiff has a

9    condition known as hyperesthesia which caused his mouth problems- the director who prepared the

10   report specifically stated that no physician who treated Plaintiff believed he had chemical burns in his

11   mouth. (Doc. #31, Exh. C1, pg. 14, also *see* Doc. #30, Exhs. J & K). Because a substantial amount of

12   medical documentation exists to show that Plaintiff did not suffer chemical burns to the mouth, there

13   is no issue of material fact that Dr. MacArthur was deliberately indifferent to Plaintiff's serious medical

14   needs. Defendants' Motion for Summary Judgment should be granted as to Count III.

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27

28                                          8

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Court enter an order **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 30), and dismiss Plaintiff's claims with prejudice.

The parties should be aware of the following:

1.       That they may file, pursuant to 28 U.S.C. § 636 (b)(1)(C) and Rule IB3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.   These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.       That this Report and Recommendation is not an appealable court order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Civil Procedure, should not be filed until entry of the District Court's judgment.

DATED:   August 6, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

9